**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
                          )
TASEKO MINES Ltd.,        )
                          )
         Plaintiff,       )
                          )
   v.                     )    Civil Action No. 16-390 (GK)
                          )
RAGING RIVER CAPITAL, et al., )
                          )
         Defendants.      )
                          )
```

### MEMORDANDUM OPINION

Plaintiff Taseko Mines Limited ("Taseko" or "the Company") brings this action against Raging River Capital LP, Raging River Capital GP LLC, Granite Creek Partners, LLC, Westwood Capital LLC, Paul M. Blythe Mining Associates Inc., Jonathan G. Lee Partners LLC, Paul Blythe ("Blythe"), Nathan Milikowsky ("Milikowsky"), Mark Radzik ("Radzik"), Henry Park ("Park") and Jonathan Lee ("Lee") (collectively "Defendants"), alleging violations of Section 13(d) of the Securities Exchange Act of 1934 ("Exchange Act").

This matter is before the Court on Defendants' Motion to Dismiss ("Motion") [Dkt. No. 28]. Upon consideration of the Motion, Opposition [Dkt. No. 34], Reply [Dkt. No. 36], and the entire record herein, and for the reasons set forth below, the Motion shall be **granted in part** and **denied in part**.

## I.   Background

### A.   Factual Overview[1]

Taseko is a Canadian-based mining company whose shares are traded on both the NYSE MKT and the Toronto Stock Exchange. Amended Complaint ¶ 2 ("Am. Compl.") [Dkt. No. 13]. Defendant Raging River Capital LP, a Delaware limited partnership, was formed in December 2015 in order to acquire Taseko common shares. Id. ¶ 16. Defendant Raging River Capital GP LLC, is the General Partner for Raging River Capital LP. Id. ¶ 17. Defendants Granite Creek Partners, LLC, Westwood Capital LLC, Paul M. Blythe Mining Associates Inc., and Nathan Milikowsky are Managing Members of Raging River Capital GP LLC. Id. ¶¶ 18-20, 23. Defendant Jonathan G. Lee Partners LLC is a Member of Raging River Capital GP LLC. Id. ¶ 21. Defendants Paul Blythe, Mark Radzik, and Henry Park have been nominated by Defendants for seats on Taseko's Board. Id. ¶¶ 22, 24-25. Radzik is also the Managing Partner of Granite Creek Partners, LLC, and Park is the Chief Investment Officer and Principal of Westwood Capital LLC. Id. ¶¶ 24-25. Defendant Jonathan Lee is the President

---

[1] For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 15 (D.C. Cir. 2008); Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979). Therefore, the facts set forth herein are taken from Plaintiff's Complaint [Dkt. No. 1-2].

of Jonathan G. Lee Partners LLC and a Limited Partner of Raging River Capital LP. Id. ¶ 26.

In January 2016, Defendants acquired more than 5% of Taseko common shares ("Taseko shares") and disclosed their acquisitions of shares by filing a Schedule 13D on January 13, 2016 ("First 13D"), as required by the Exchange Act. Id. ¶ 5. In December 2015 and January and February 2016, Defendants acquired Taseko senior notes due in 2019 ("Notes"). Am. Compl. ¶ 38. During that same time period, Raging River Capital 2 LLC also acquired Taseko senior notes due in 2019 ("Additional Notes"). Opp'n at 26.

Shortly after acquiring their shares, Defendants exercised their rights under the Business Corporations Act (British Columbia) ("BCBCA")[2] to demand that Taseko convene a shareholder meeting to vote on the removal of three current Taseko directors and the addition of four new directors nominated by Defendants. Id. The shareholder meeting is currently scheduled for May 10, 2016.

On February 26, 2016, Taseko filed a Complaint [Dkt. No. 1] in this matter, alleging that the First 13D failed to include information required by § 13(d) of the Exchange Act and is false and misleading. In response, Defendants filed an amended Schedule

---

[2] Corporations in Canada can choose to incorporate federally under the Canada Business Corporations Act ("CBCA"), RSC 1985, c C-44 (Can.), or provincially under a province's similar law, such as the BCBCA, SBC 2002, c 57 (Can).

13D on March 9, 2016 ("First Amended 13D"), which included the
original Complaint as an exhibit. See First Amended 13D, Exhibit
2 to Mot. [Dkt. No. 28-2]; Amended Complaint ("Am. Compl.") ¶ 6
[Dkt. No. 13]. On March 21, 2016, Plaintiff filed an Amended
Complaint, claiming that the First Amended 13D only cured some of
the issues it had raised and that Defendants' disclosures remain
materially deficient. Am. Compl. ¶ 6. On March 28, 2016, Raging
River filed a second amended Schedule 13D ("Second Amended 13D").
Opp'n at 4.

In the midst of these actions, Taseko filed a Motion to Lift
Stay and Expedite Discovery on March 14, 2016 [Dkt. No. 12], in
anticipation of Defendants' Motion to Dismiss. In private
securities actions, the Private Securities Litigation Reform Act
of 1995 ("PSLRA") imposes an automatic stay of all discovery and
other proceedings pending a motion to dismiss, subject to certain
exceptions. 15 U.S.C. § 78u-4(b)(3)(B). Taseko expressed its need
for limited discovery on certain issues to support its planned
preliminary injunction motion, and indicated that it would suffer
prejudice if the stay were not lifted and discovery expedited.
Motion to Lift Stay at 2-3. This Court granted the Motion to Lift
Stay for purposes of limited discovery on April 4, 2016. See
Memorandum Order [Dkt. No. 33].

After Defendants filed the Second Amended 13D, Plaintiffs
acknowledged that the filing mooted some of the issues it had

4

raised. Specifically, Taseko is no longer seeking corrective disclosures with respect to Defendants' alleged affirmative misrepresentations nor is it seeking disclosure of "undisclosed groups" in light of Defendants' representation that no such additional groups exist. Opp'n at 13. Taseko is still seeking the following information that it believes Defendants are required to disclose:

1. The amount of funds provided by each limited partner of Raging River Capital LP for the purchase of Taseko shares and Notes;

2. The purpose for which Defendants acquired the Taseko Notes;

3. All contracts, arrangements, understandings and/or relationships between Defendants and other persons with respect to any Taseko securities.

Id. On April 15, 2016, the same day Defendants filed their Reply in support of the present Motion to Dismiss, Defendants filed a Third Amended Schedule 13D ("Third Amended 13D"). See Third Amended 13D, Exhibit A to Reply [Dkt. No. 36-2]. Defendants argue that the Third Amended 13D addresses all of Taseko's remaining issues. Reply at 1-2.

## B. Securities Exchange Act of 1934

Section 13(d) of the Exchange Act mandates that "any person" who becomes "directly or indirectly the beneficial owner of more than 5 per centum" of a class of securities of an issuing corporation must file a statement setting forth certain

information with the SEC and send the statement to the issuer within 10 days after such acquisition. 15 U.S.C. § 78m(d). "Person" is not limited just to individuals; the Exchange Act states that "when two or more persons act as a . . . group for the purpose of acquiring, holding, or disposing of securities of an issuer, such syndicate or group shall be deemed a 'person' for the purposes of this subsection." 15 U.S.C. § 78m(d)(3). The SEC has prescribed Schedule 13D as the official form for compliance with § 13(d) of the Exchange Act. 17 C.F.R. § 240.13d-101.

Under the Exchange Act, the Schedule 13D shall contain the following information:

> (A) the background, and identity, residence, and citizenship of, and the nature of such beneficial ownership by, such person and all other persons by whom or on whose behalf the purchases have been or are to be effected;
>
> (B) the source and amount of the funds or other consideration used or to be used in making the purchases, and if any part of the purchase price is represented or is to be represented by funds or other consideration borrowed or otherwise obtained for the purpose of acquiring, holding, or trading such security, a description of the transaction and the names of the parties thereto, except that where a source of funds is a loan made in the ordinary course of business by a bank, as defined in section 78c(a)(6) of this title, if the person filing such statement so requests, the name of the bank shall not be made available to the public;
>
> (C) if the purpose of the purchases or prospective purchases is to acquire control of the business of the issuer of the securities, any plans or proposals which such persons may have to liquidate such issuer, to sell its assets to or merge it with any other persons, or to

6

make any other major change in its business or corporate structure;

(D) the number of shares of such security which are beneficially owned, and the number of shares concerning which there is a right to acquire, directly or indirectly, by (i) such person, and (ii) by each associate of such person, giving the background, identity, residence, and citizenship of each such associate; and

(E) information as to any contracts, arrangements, or understandings with any person with respect to any securities of the issuer, including but not limited to transfer of any of the securities, joint ventures, loan or option arrangements, puts or calls, guaranties of loans, guaranties against loss or guaranties of profits, division of losses or profits, or the giving or withholding of proxies, naming the persons with whom such contracts, arrangements, or understandings have been entered into, and giving the details thereof.

15 U.S.C. 78m(d)(1).

## II.  Legal Standard

### A.  Standard of Review Under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563.

Under the Twombly standard, a "court deciding a motion to dismiss must not make any judgment about the probability of the

plaintiffs' success . . . [,] must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [, and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 (D.C. Cir. 2008) (internal quotation marks and citations omitted). The court shall not, however, accept as true "legal conclusions or inferences that are unsupported by the facts alleged." Ralls Corp. v. Comm. on Foreign Inv. in U.S., 758 F.3d 296, 315 (D.C. Cir. 2014) (citation omitted). Furthermore, a complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557) (alteration in Iqbal).

**B.  PLSRA**

"As a check against abusive litigation in private securities fraud actions, the Private Securities Litigation Reform Act of 1995 (PSLRA) includes exacting pleading requirements," beyond the requirements of Rule 12(b)(6). Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 308 (2007). The PSLRA requires that a plaintiff asserting a violation of the federal securities laws based on a false or misleading statement must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, . . .

state with particularity all facts on which that belief is formed."
15 U.S.C. § 78u–4(b)(1).

Put differently, the Court "must ascertain whether the
complaint states sufficient facts to permit a reasonable person to
find that the plaintiff satisfied this element of his claim—that
the defendant made a false or misleading statement." Teachers'
Ret. Sys. of Los Angeles v. Hunter, 477 F.3d 162, 173 (4th Cir.
2007). In evaluating the facts, the Court should consider: "the
number and level of detail of the facts; the plausibility and
coherence of the facts; whether sources of the facts are disclosed
and the apparent reliability of those sources; and any other
criteria that inform how well the facts support the plaintiff's
allegation that defendant's statements or omissions were
misleading." Id. at 174.

## III. Analysis

### A.   The Amended Complaint Is Subject to the PSLRA's Pleading Requirements

As an initial matter, Taseko contends that its Amended
Complaint is not subject to the PSLRA pleading requirements,
arguing that the pleading requirements apply only to "securities
fraud actions." Opp'n at 2. The basis for Taseko's argument is
that the section heading for 15 U.S.C. § 78u–4(b) (the heightened
pleading requirements) reads, "Requirements for securities fraud
actions," and Taseko contends that this is not a fraud action. Id.

9

The plain language of the statute suggests otherwise. Our Court of Appeals has consistently held that "[t]he plain meaning of a statute cannot be limited by its title." Nat'l Ctr. for Mfg. Scis. v. Dep't of Def., 199 F.3d 507, 511 (D.C. Cir. 2000) (citing Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206 (1998)).

Taseko's claim is based on 15 U.S.C. 78m(d) (Section 13(d) of the Exchange Act), which is found in the same chapter as Section 78u-4(b). Section 78u-4(b) specifically states that its pleading requirements apply to "any private action arising under this chapter in which the plaintiff alleges that the defendant (A) made an untrue statement of a material fact; or (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading." 15 U.S.C. § 78u-4(b)(1) (emphasis added). With such clear statutory language, it is difficult to see how the PLSRA's heightened pleading requirements could not apply.

In addition to the pleading requirements, Section 78u-4(b) also contains the PSLRA's automatic stay of discovery provisions, which Taseko did not dispute were applicable in this instance. See Motion to Lift Stay at 8. In other words, even though both the pleading requirements and the stay provisions are in the section titled "Requirements for securities fraud actions," Taseko argues that only the stay provisions are applicable to the case at hand.

15 U.S.C. § 78u-4(b). Such inconsistency within the statute is highly unlikely.

For these reasons, the Court finds that Taseko's Amended Complaint is subject to the heightened pleading requirements of the PSLRA.[3]

### B.   Plaintiff Has Sufficiently Stated a Claim

Defendants argue that Taseko has not pled facts sufficient to satisfy the heightened pleading requirements of the PSLRA. See Mot. at 11. They argue that mere speculation that additional information might exist which should have been disclosed is not sufficient to meet the PSLRA pleading standards. Id. at 12. With regard to Taseko's allegations of false or misleading statements, Defendants contend that Taseko must demonstrate with specificity why and how they are false or misleading. Id.

### 1.   Specific Sources of Funds

In its Amended Complaint, Taseko alleges that Defendants failed to disclose "the specific source of funds provided by each

---

[3] Defendants allege that the Amended Complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Mot. at 12 (quoting 15 U.S.C. § 78u-4(b)(2)(A)). This is incorrect. The scienter requirement applies only to actions "in which the plaintiff may recover money damages," 15 U.S.C. § 78u-4(b)(2)(A); see also SEC v. e-Smart Technologies, Inc., 82 F. Supp. 3d 97, 104 (D.D.C. 2015) ("scienter is unnecessary to establish a violation of Section 13(d)(1)"). The Amended Complaint does not seek money damages. See Am. Compl. at 20-21. Accordingly, there is no scienter requirement.

limited partner of Raging River Capital LP" to purchase Taseko shares and notes. Am. Compl. ¶ 35. The First Amended 13D states, in response to question number 4, "Source of Funds," that the acquisitions were funded out of Raging River Capital LP's working capital (abbreviated as "WC" per the Schedule 13D instructions). First Amended 13D at 2.

Although Defendants contend that no further disclosure is required, Mot. at 14, they nonetheless disclosed "the capital contributions of each [of] the limited partners to Raging River [Capital LP]" "for the purposes of purchasing the Common Shares and the Notes" in the Third Amended 13D. Third Amended 13D at 2. Attached to the Third Amended 13D is a chart listing the capital contributions of each of the partners of Raging River LP. Third Amended 13D at 5 (Exhibit 99.11). Defendants argue that Taseko's request for this information is now moot. Reply at 8-9.

Given Defendants' disclosure, the Court need not decide whether such disclosure was required by Section 13D. Taseko asked for "[t]he amount of funds provided by each limited partner of Raging River Capital LP for the purchase of Taseko shares and Notes," Opp'n at 13, which Defendants have now provided. Accordingly, Taseko's claim is moot and will be **dismissed.**

### 2.   Purpose of the Acquisition

Taseko's next claim is that Defendants have not sufficiently stated the purpose for which they acquired the Taseko Notes, as required by Item 4 of Schedule 13D.

In its Opp'n, Taseko quotes a portion of Defendants' First Amended 13D, discussing the purchases of the Notes:

> In December 2015 and January and February 2016, the Reporting Persons acquired the Issuer's 7.75% senior notes due 2019 with an aggregate cost of $6,040,323 (excluding accrued interest) (the "Notes"). In addition to the Notes acquired by the Reporting Persons, Raging River Capital 2 LLC ("RC 2 LLC"), a Delaware limited liability company established solely as an investment vehicle for Notes of the Issuer, acquired in December 2015 and February 2016, the Issuer's 7.75% senior notes due 2019 with an aggregate cost of $2,873,737 (excluding accrued interest) (the "Additional Notes").

Opp'n at 26 (quoting First Amended 13D at 13). Taseko points to this quote as evidence of Defendants' failure to state a purpose for the purchase of the Notes. Defendants point out that the quote omits a later portion of the same paragraph in which Defendants state that Raging River Capital 2 LLC acquired the Additional Notes "for investment purposes because it believed that they represented an attractive investment opportunity." First Amended 13D at 13. What Defendants overlook though, is that this only provides an explanation for the purpose of the Additional Notes acquired by Raging River Capital 2 LLC (not a party to this case), not the Notes acquired by Defendants.

13

In the Third Amended 13D, Defendants state "that they acquired the Notes for investment purposes because they believed the Notes represented an attractive investment opportunity" and that they "also intend to pursue a concerned shareholder campaign in respect of the Issuer" Third Amended 13D at 2. This description of Defendants' purpose in acquiring the Taseko Notes is nearly identical to its stated purpose for acquiring the Taseko shares, and Taseko does not dispute the adequacy of that disclosure. See Opp'n at 26-27. Therefore, the Court finds that the Third Amended 13D has mooted Taseko's claim for information regarding the purpose for which Defendants acquired the Notes. As such, the Court need not address the parties' dispute as to whether Schedule 13D requires the disclosure of this information and this claim is **dismissed.**

### 3.    Alleged Failure to Disclose Agreements

Next, Taseko alleges that Defendants have not disclosed all of their agreements and arrangements with respect to Taseko securities. Am Compl. ¶¶ 47-52; Opp'n at 27. In particular, Taseko alleges that "there are almost certainly undisclosed agreements or

understandings" involving Randy Davenport[4] and/or Jonathan Lee.[5]
Opp'n at 27-28. Taseko also alleges the likely existence of a
contract with Wanxiang America, the sole investor in Raging River
Capital 2 LLC, concerning the possible sale of a copper mining
asset owned by Taseko. Id. at 10-11, 28. Taseko infers this from
Wanxiang's involvement in Raging River Capital 2 LLC, as well as
Wanxiang's past interest in purchasing the copper mine.

Item 6 of Schedule 13D requires the filer to "[d]escribe any
contracts, arrangements, understandings or relationships (legal or
otherwise) among the [filers] and between such persons and any
person with respect to any securities of the issuer . . . ." 17
C.F.R. § 240.13d-101.

Defendants argue that Plaintiff has failed to allege facts
showing that any of the Defendants have an undisclosed agreement
with "any other stockholder beside the Reporting Persons to 'act
together for the purpose of acquiring, holding, voting or disposing
of equity securities' of Taseko, which is required for a 'group'
to exist (or that there is any requirement to disclose 'contracts,

---

[4] Mr. Davenport is one of Raging River's nominees to Taseko's Board
of Directors and his company, RL Davenport Resources, Inc., is a
limited partner in Raging River Capital LP. First Amended 13D at
13; Opp'n at 27.

[5] Defendant Lee allegedly "orchestrated the Defendants' purchases
of Taseko common shares from a Taseko insider." Opp'n at 28. Lee
is also a limited partner in Raging River Capital LP and his
company, Jonathan G. Lee Partners LLC, is a member of Raging River
Capital GP LLC. First Amended 13D at 14; Opp'n at 28.

arrangements, understandings and/or relationships between Defendants and such other Taseko shareholders' when a 'group' does not exist[)]." Mot. at 17 (quoting 17 C.F.R. § 240.13d-5(b)(1) [6]).

Item 6 is broad and, contrary to Defendants' characterization, its requirements stand independent of whether or not a "group" exists. Item 6 clearly encompasses agreements between filers "and <u>any</u> person with respect to any securities of the issuer." <u>Id.</u> (emphasis added). Not all parties to the agreements need to be members of a "group" and nothing in Item 6 suggests that its requirements are contingent on the existence of a "group."

Defendants argue that they have satisfied the reporting requirements of the Exchange Act and mooted Plaintiff's claim by attaching Taseko's complaints to their Schedule 13Ds. Defendants claim they are "not required to admit allegations in a Schedule 13D that [they] dispute[] in good faith." Mot. at 15 (quoting <u>Cartica Mgmt., LLC v. Corpbanca, S.A.</u>, 50 F. Supp. 3d 477, 494 (S.D.N.Y. 2014)); Reply at 12. When "the record demonstrates that there is a dispute as to the facts, the law requires only that the disputed facts and possible outcomes be disclosed." <u>Cartica Mgmt.,</u>

---

[6] The statute reads: "When two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership, for purposes of sections 13(d) . . . of all equity securities of that issuer beneficially owned by any such persons." 17 C.F.R. § 240.13d-5(b)(1).

50 F. Supp. 3d at 495-96 (quoting Avnet, Inc. v. Scope Indus., 499 F. Supp. 1121, 1125-26 (S.D.N.Y.1980)).

Defendants "unequivocally state that they have disclosed all contracts, arrangements, understandings and relationships that are required to be disclosed by Rule 13(d) and the regulations promulgated thereunder." Reply at 11. Defendants continue that, because there is a dispute as to the fact of the existence of any such agreements, they have satisfied their reporting requirements by disclosing Plaintiff's allegations. Reply at 12-13.

Unfortunately, Defendants' "unequivocal" statement is unclear as to whether the dispute relates to facts or the law – specifically the requirements of Rule 13(d). Given Defendants' incorrectly narrow interpretation of Item 6, Defendants' statement assures the Court only that they believe they are not required to disclose any additional agreements under their interpretation of the law, not that no such agreements exist. Accordingly, Defendants' attachment of the Amended Complaint to their Schedule 13D disclosures does not discharge their Section 13D obligations on this issue.

The Court finds that Plaintiff has sufficiently pled facts regarding possible undisclosed agreements involving Randy Davenport, Jonathan Lee, and Wanxiang America to survive a motion to dismiss. Plaintiff's allegations are detailed, plausible, and coherent, and when considered in light of Defendants' continued

reticence to disclose information, including contracts involving the filing parties,[7] the Court finds that Plaintiff has sufficiently stated facts that would "permit a reasonable person to find that the plaintiff satisfied this element of his claim—that the defendant made a false or misleading statement." Hunter, 477 F.3d at 173. Defendants' request for dismissal of this claim will be **denied**.

### 4. Alleged Failure to Include Jonathan Lee and Jonathan G. Lee Partners LLC as Reporting Persons

Taseko's final remaining claim is that, based on "Mr. Lee's role in orchestrating the Defendant's purchase of Taseko common shares," he and his company should have been included as Schedule 13D reporting persons. Opp'n at 30; Am. Compl. ¶¶ 52, 62-42.

Under the Exchange Act, as noted previously, all beneficial owners of more than 5% of a security must file a Schedule 13D. 17 C.F.R. § 240.13d-1. For purposes of § 13D, a beneficial owner is:

> any person who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise has or shares:
>
>> (1) Voting power which includes the power to vote, or to direct the voting of, such security; and/or,

---

[7] For example, the First 13D did not include the partnership agreement for Raging River Capital LP, although the agreement explicitly states that its principal objective is to effect changes in Taseko's board of directors by acquiring common shares and bonds of Taseko and carrying out a concerned shareholder campaign. See First 13D; First Amended 13D Exhibit 99.3 at 3.1

> (2) Investment power which includes the power to dispose, or to direct the disposition of, such security.

17 C.F.R. § 240.13d-3. Although Defendants have stated that Jonathan Lee ("Lee") and Jonathan G. Lee Partners LLC ("Lee Partners") do "not have voting power or investment power," Mot. at 18, Plaintiff argues that because Lee is a limited partner of Raging River Capital, LP and Lee Partners is a member of Raging River Capital GP LLC, "[a]t the very least, it is not clear, based on Mr. Lee's investments and involvements in those special-purpose entities, that he does not share power over voting and/or disposition of the Taseko common shares." Opp'n at 31-32.

Such an allegation is not sufficient to meet the pleading requirements of the PSLRA. Plaintiff does not plead specific facts to support its allegation that Lee and Lee Partners are beneficial owners, but instead alleges that it is merely a possibility that Lee and Lee Partners are beneficial owners.

Next, Plaintiff argues that, even if Mr. Lee cannot influence the voting or disposition of Defendants' Taseko shares, he is still required to join as a reporting person on the Schedule 13D "based on his role in purchasing the Taseko common shares." Opp'n at 32. As discussed previously, a "group" for purposes of Section 13D is formed when "two or more persons agree to act together for the purpose of

19

acquiring, holding, voting or disposing of equity securities of an issuer." 17 C.F.R. § 240.13d-5. Members of the group are considered reporting persons. 15 U.S.C. § 78m(d)(3).

Taseko alleges that Lee initiated and participated in the negotiations and acquisitions of the Taseko shares, and is therefore a member of the group. Opp'n at 32. Defendants point to case law holding that a person must have a beneficial ownership interest in order to be considered a member of the group. See Hemipherx Biopharma, Inc. v. Johannesburg Consol. Invs., 553 F.3d 1351, 1363-64 (11th Cir. 2008) (holding that a person must actually own a beneficial interest in shares in order to incur reporting liabilities under section 13(d)); Rosenberg v. XM Ventures, 274 F.3d 137, 147 (3d Cir. 2001) ("based upon the statutory and regulatory text, relevant legislative history, and caselaw from our sister circuits, we conclude that . . . each member of a section 13(d) group must hold beneficial ownership of the shares of the issuing entity prior to becoming a section 13(d) group member").

At most, there is a disputed factual question as to whether Lee was part of the "group." Defendants once again argue that, because there is a genuine factual dispute and they have "disclosed all material facts regarding Taseko's position on this issue," the claim is moot. Reply at 16; Avnet, 499 F. Supp. at 1125 (the "purpose of the disclosure

20

provisions of the securities laws is to see to it that the [shareholder] discloses to the investor the facts as truly believed by the discloser. When, as here, the record demonstrates that there is a dispute as to the facts, the law requires only that the disputed facts and the possible outcomes be disclosed").

Plaintiffs have not sufficiently alleged facts to show that Lee or Lee Partners were required to file Schedule 13Ds. Even if they had, to the extent there would have been a genuine dispute as to the facts of Lee and Lee Partners' status as beneficial owners or members of a group, Defendants have made adequate disclosures in their Schedule 13D filings, which include Taseko's allegations. See First Amended 13D. Accordingly, Defendants' motion will be granted and this claim will be **dismissed.**

## IV.  Conclusion

For all of the foregoing reasons, Defendants' Motion to Dismiss is **granted in part** and **denied in part.** An Order shall accompany this Memorandum Opinion.

April 26, 2016

Gladys Kessler
United States District Judge

**Copies to:** attorneys on record via ECF