UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                              )
TASEKO MINES Ltd.,            )
                              )
          Plaintiff,          )
                              )
     v.                       )    Civil Action No. 16-390 (GK)
                              )
RAGING RIVER CAPITAL, et al., )
                              )
          Defendants.         )
                              )
```

### MEMORDANDUM OPINION

Plaintiff Taseko Mines Limited ("Taseko" or "the Company") brings this action against Raging River Capital LP, Raging River Capital GP LLC, Granite Creek Partners, LLC, Westwood Capital LLC, Paul M. Blythe Mining Associates Inc., Jonathan G. Lee Partners LLC, Paul Blythe, Nathan Milikowsky, Mark Radzik, Henry Park, and Jonathan Lee (collectively "Defendants"), alleging violations of Section 13(d) of the Securities Exchange Act of 1934 ("Exchange Act"). 15 U.S.C. § 78m(d).

This matter is now before the Court on Plaintiff's Motion for a Preliminary Injunction ("Injunction Motion") [Dkt. No. 38], as well as Plaintiff's Motion for Reconsideration ("Recon. Motion") [Dkt. Nos. 45, 46-2]. Upon consideration of the Motions, Opposition [Dkt. Nos. 49-2], Reply [Dkt. No. 51-2], and the entire record herein, and for the reasons set forth below, the Motions shall be **granted**.

1

I.    **Background**

    A.    **Factual Overview**

Only a brief recitation of the facts is necessary at this juncture to decide the present Motions. For a more detailed summary, see the Court's April 26, 2016 Memorandum Opinion ("Mem. Op.") [Dkt. No. 44].

Taseko is a Canadian-based mining company whose shares are traded on both the NYSE MKT and the Toronto Stock Exchange. Amended Complaint ¶ 2 ("Am. Compl.") [Dkt. No. 13]. In January 2016, Defendants acquired more than 5% of Taseko common shares ("Taseko Shares") and disclosed their acquisitions of shares by filing a Schedule 13D on January 13, 2016 ("First 13D"), as required by the Exchange Act. Id. ¶ 5. In December 2015 and January and February 2016, Defendants acquired Taseko senior notes due in 2019 ("Notes"). Am. Compl. ¶ 38. During that same time period, Raging River Capital 2 LLC also acquired Taseko senior notes due in 2019 ("Additional Notes"). Opp'n at 26.

Shortly after acquiring their shares, Defendants called for a shareholder meeting to vote on the removal of three current Taseko directors and the addition of four new directors they nominated. Id. The shareholder meeting is currently scheduled for May 10, 2016.

Over the course of this litigation, Defendants have amended their Schedule 13D disclosures on three separate occasions. See

First Amended 13D, Exhibit 2 to Motion to Dismiss [Dkt. No. 28-2]; Second Amended 13D, discussed in Opp'n at 4; Third Amended 13D, Exhibit A to Reply to Motion to Dismiss [Dkt. No. 36-2].

On April 26, 2016, the Court granted in part Defendants' Motion to Dismiss [Dkt. No. 43]. Plaintiff's remaining claim relates to alleged undisclosed agreements regarding Taseko securities. See Mem. Op. at 14-18. In its Motion for Reconsideration, Plaintiff asks the Court to reconsider the dismissal of its claim that Defendants have not properly disclosed their purpose in purchasing the Notes.

## B. Securities Exchange Act of 1934

Section 13(d) of the Exchange Act requires entities that acquire a 5% or more interest in an issuing corporation to file a Schedule 13D setting forth certain information. See 15 U.S.C. § 78m(d); 17 C.F.R. § 240.13d-101.

Currently at issue is Item 4 of the Schedule 13D. The statute requires, inter alia, that the filer state:

> if the purpose of the purchases or prospective purchases is to acquire control of the business of the issuer of the securities, any plans or proposals which such persons may have to liquidate such issuer, to sell its assets to or merge it with any other persons, or to make any other major change in its business or corporate structure;

15 U.S.C. 78m(d)(1)(C). Similarly, the Regulation requires that the filer "[s]tate the purpose or purposes of the acquisition of

3

securities of the issuer," including any plans that might relate to the purchase of additional securities, extraordinary corporate transactions, the sale or transfer of a material amount of assets of the issuer, and other intended corporate changes or transactions. 17 C.F.R. § 240.13d-101

## II.  Legal Standard

### A.    Reconsideration

A district court may revise its own interlocutory decisions "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Rule 54(b) permits the district court to reconsider an interlocutory order "as justice requires," which requires "determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004)); see also Singh v. George Washington Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005). The term "'[a]s justice requires' indicates concrete considerations" by the court, Williams v. Savage, 569 F. Supp. 2d 99, 108 (D.D.C. 2008), such as "whether the court patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred." In Def. of Animals v. Nat'l Inst. of

Health, 543 F. Supp. 2d 70, 75 (D.D.C. 2008) (internal citation and quotation marks omitted).

"Furthermore, the party moving to reconsider carries the burden of proving that some harm would accompany a denial of the motion to reconsider." Id. at 76. The court's discretion under 54(b) is "subject to the caveat that, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Singh, 383 F. Supp. 2d at 101 (internal citations omitted).

### B.   Preliminary Injunction

This court may issue interim injunctive relief only when the movant demonstrates "[1] that [they are] likely to succeed on the merits, [2] that [they are] likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [his or her] favor, and [4] that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008) (citing Munaf v. Geren, 128 S. Ct. 2207, 2218-19 (2008)). It is particularly important for the movant to demonstrate a likelihood of success on the merits. Cf. Benten v. Kessler, 505 U.S. 1084, 1085 (1992) (per curiam). Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." Am.

Bankers Ass'n v. Nat'l Credit Union Admin., 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

The other critical factor in the injunctive relief analysis is irreparable injury. A movant must "demonstrate that irreparable injury is likely in the absence of an injunction." Winter, 129 S. Ct. at 375 (citing Los Angeles v. Lyons, 461 U.S. 95, 103 (1983)). Provided that the plaintiff demonstrates a likelihood of success on the merits and of irreparable injury, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987).

Because a preliminary injunction is an extraordinary remedy, courts should grant such relief sparingly. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). The Supreme Court has observed "that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Id. Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. In addition, any injunction that the court issues must be carefully circumscribed and "tailored to remedy the harm shown." Nat'l Treasury Employees Union v. Yeutter, 918 F.2d 968, 977 (D.C. Cir. 1990).

III. Analysis

    A.   Motion to Reconsider

In their Reply in support of their Motion to Dismiss, Defendants argued that their Third Amended 13D (filed the same day as the Reply) mooted Plaintiff's claim that Defendants had failed to properly disclose their purpose in acquiring the Notes. See Reply to Motion to Dismiss at 10-11 [Dkt. No. 36]. In the Third Amended 13D, Defendants state for the first time that they "acquired the Notes for investment purposes because they believed the Notes represented an attractive investment opportunity" and because they "intend to pursue a concerned shareholder campaign in respect of the Issuer." Third Amended 13D at 2.

The purpose given for acquiring the Notes was the same given as to why Defendants acquired the Taseko shares. Plaintiff did not object to the sufficiency of Defendants' stated purpose for acquiring the Taseko shares, nor did they file a Surreply objecting, and therefore the Court presumed that Plaintiff accepted that the stated purpose was likewise sufficient for the Notes. See Mem. Op. at 13-14. Having found that Defendants had sufficiently stated their purpose in acquiring the Notes, the Court found Plaintiff's claim to have become moot and thereby dismissed it. Id.

Plaintiff asks the Court to reconsider its ruling, see Recon. Motion at 2, because Defendants "did not accurately disclose their

purpose for acquiring the Notes, which was not and could not have been the same as their purpose in acquiring Taseko common shares." Id. Plaintiff also argues that, because Defendants filed their Third Amended 13D on the same day they filed their Reply to the Motion to Dismiss, Plaintiff did not have an opportunity to address the adequacy of the newly filed Third Amended 13D. Id. at 3-4. Plaintiff further contends that Defendants did not disclose in the Third Amended 13D their "true" purpose in acquiring the Notes and that they misstated the purpose they did disclose. Injunction Motion at 21-23.

First, Plaintiff states that Defendants could not have acquired the Notes in order to carry out a concerned shareholder campaign because ownership of the Notes does not entitle them "to call a shareholder meeting, advance resolutions to be put to a shareholder vote, solicit proxies, or vote on any corporate matters, including board membership." Id. While Defendants may have purchased the Notes to protect against the risks of the Taseko shares, which they in turn purchased to pursue a concerned shareholder campaign, the Notes themselves do not facilitate this. Consequently, holders of Notes have no authority to participate in Taseko's governance.

Second, Plaintiff argues that Defendants' stated purpose is contrary to the purpose evidenced in the documents received in discovery. Recon. Motion at 5. According to Plaintiff, the

documents indicate that Defendants acquired the Notes in order to hedge against "the investment they made in the common shares, and to gain leverage over common shareholders in the bankruptcy process in the event [Taseko] were to become insolvent." Id. This disclosure is critical, Plaintiff argues, because it places Defendants' interests at odds with the interests of Taseko's other shareholders. Id. at 5-6; Injunction Motion at 21-26.

Defendants reply that, even assuming arguendo that they acquired the Notes to "hedge" against their investment in the Taseko shares, their disclosure is still correct because hedging is an investment purpose. Opp'n at 2. Even if Defendants acquired the Notes for investment purposes, the Regulation requires them to disclose the "purpose or purposes of the acquisition," 17 C.F.R. § 240.13d-101 (emphasis added). In sum, Defendants are still required to disclose any other purposes underlying their acquisition, such as those alleged by Plaintiff.

The Court also agrees with Plaintiff that it did not have a chance to properly respond to the adequacy of Defendants' newly proffered purpose in acquiring the Notes. Thus, Plaintiff is raising several arguments challenging the sufficiency of Defendants' stated purpose in acquiring the Notes that the Court did not have before it - and which Plaintiff did not have

sufficient opportunity to raise previously - when it decided the Motion to Dismiss.

Accordingly, for the foregoing reasons, Plaintiff's Motion to Reconsider is **granted**, the portion of the Court's prior decision dismissing Plaintiff's claim regarding disclosure of the purpose for the acquisition of the Taseko Notes is **vacated**, and the Motion to Dismiss Plaintiff's claim regarding disclosure of the purpose for the acquisition of the Taseko Notes is **denied**.

### B.    Preliminary Injunction

#### 1.    Taseko Is Likely to Succeed on the Merits

As discussed above, Taseko has made a credible claim that Defendants did not fully and accurately disclose their purposes in acquiring the Taseko Notes. On its face, the language of Section 13(d) does not indicate how much detail or specificity is required in disclosures. However, it is clear in this instance that Defendants' explanation that the Notes were acquired for "investment purposes" does not sufficiently communicate to investors their intentions. See Decicco v. United Rentals, Inc., 602 F. Supp. 2d 325, 347 (D. Conn. 2009) ("The purpose of a Schedule 13D filing is to notify the security issuer and the public that a person has accumulated a significant position in a company's [securities], and to disclose that person's intentions.")

Plaintiff has provided evidence suggesting that Defendants were motivated in part to purchase the Notes to protect their

investment in the Taseko shares - specifically to ensure influence and protection in case of default or bankruptcy. Injunction Motion at 23-24. Plaintiff further alleges that the documents describe how, in the case of bankruptcy, Defendants could potentially make more money than they would if Taseko remains solvent. Injunction Motion at 29-30. This information is obviously important to investors, as it indicates that Defendants' interests may not be fully aligned with those of the shareholders.

While Defendants are correct that a conflict of interest naturally arises by virtue of owning debt and equity at the same time, the potential conflict is significant enough to have additional implications here. Opp'n at 15. Plaintiff alleges that Defendants sought a substantial bond position in order to have a position of influence in case of bankruptcy, and to potentially even profit from bankruptcy. Injunction Motion at 23-24.

Given the evidence suggesting Defendants did not fully disclose their purposes in acquiring the Notes, and the misleading nature of their disclosure, Plaintiff has shown that it is likely to succeed on the merits of its claim.

### 2.   Taseko Will Suffer Irreparable Harm

The Court finds that Taseko will suffer irreparable harm in the absence of a preliminary injunction. "An uninformed shareholder vote is often considered an irreparable harm, particularly because the raison d'etre of many of the securities

laws is to ensure that shareholders make informed decisions." Allergan, Inc. v. Valeant Pharm. Int'l, Inc., No. SACV 14-1214 DOC(ANx), 2014 WL 5604539, at *16 (C.D. Cal. Nov. 4, 2014); see also Irving Bank Corp. v. Bank of New York Co., 692 F. Supp. 163, 168-69 (S.D.N.Y. 1988) ("Forcing shareholders . . . to make decisions without full and accurate disclosure of material information . . . causes an irreparable injury"). That said, noncompliance with Section 13(d) does not per se result in irreparable harm. See Masters v. Avanir Pharm., Inc., 996 F. Supp. 2d 872, 885 (C.D. Cal. 2014) (rejecting per se rule).

Defendants do not dispute that the shareholder vote on directors is an important one. Shareholders voting on the basis of inadequate disclosures may significantly affect who wins several director positions, and indeed control of the Board of Directors. Although Plaintiff does not seek money damages, should Plaintiff prevail, sorting out post-vote remedies is likely to be difficult and further complicated by the fact that control of the Board of Directors of Taseko--the Plaintiff in this case--may have shifted to Defendants. See Injunction Motion at 33-34; see also Reply in Support of Motion to Lift Stay at 3, 14 [Dkt. No. 31].

Defendants argue that irreparable injury does not automatically exist whenever there is an alleged disclosure violation, but fail to explain why in this instance the injury is not irreparable. The crux of Defendants' arguments are that the

necessary information is fully disclosed and therefore there is "no danger of any 'uninformed stockholder vote'," and that Plaintiff has already communicated its conflict of interest theory to stockholders. Opp'n at 17-18.  This argument goes to the merits of Plaintiff's claim, which the Court has already found the Plaintiff likely to succeed on.

### 3.   Balance of Equities and Public Interest

Defendants have not shown that they will suffer any harm by issuance of this injunction, particularly since Plaintiff is willing to continue with the shareholder vote as scheduled on May 10, 2016, if Defendants file sufficient Schedule 13D disclosures by May 6, 2016. Defendants' reticence in disclosing information and failure to even disclose their purchase (or intention to purchase[1]) of the Notes in their First Schedule 13D also weighs against them. Any harm suffered by Defendants is outweighed by the harm Plaintiff will suffer from inadequate disclosures.

In addition, effective enforcement of the federal securities laws promotes the public interest. Graphic Sciences, Inc. v. Int'l Mogul Mines Ltd., 397 F. Supp. 112, 128 (D.D.C. 1974) ("The Court concludes that the public interest demands uniform and exacting

---

[1] Item 4 requires the reporting person to describe "any plans or proposals" they "may have which would relate to or would result in: (a) The acquisition by any person of additional securities of the issuer, or the disposition of securities of the issuer." 17 C.F.R. § 240.13d-101.

enforcement of the securities laws and that policy encourages a thorough review of possible violations thereof."). Defendants' only response is that Canada has a greater interest than the United States in remedying any purported disclosure issues. Opp'n at 19. It is not clear how Canada's interest diminishes the public interest in disclosure or how denying an injunction would further the public interest, either here or in Canada.

## IV.   Conclusion

For all of the foregoing reasons, Plaintiff's Motion for a Preliminary Injunction is **granted**. An Order shall accompany this Memorandum Opinion.


May 5, 2016

Gladys Kessler
United States District Judge


**Copies to**: attorneys on record via ECF